*NOT FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- X

In re R.J. Dooley Realty, Inc.,

       Debtor.

---------------------------------------------------------- X

Case No. 09-36777

Chapter 11

**MEMORANDUM DECISION DENYING APPLICATION
FOR AN ORDER TO SHOW CAUSE**

A P P E A R A N C E S :

Feerick Lynch MacCartney, PLLC
Donald J. Feerick, Jr.
96 South Broadway
South Nyack, New York 10960

Kurtzman Matera, PC
Rosemarie Matera
664 Chestnut Ridge Road
Spring Valley, New York 10977

Attorneys for Mahoney's at Dooley Square, Inc.

       Debtor commenced its voluntary chapter 11 case on July 2, 2009. The nature of Debtor's business is single asset real estate as defined in 11 U.S.C. § 101(51B).[1] Mark Tulis was appointed as chapter 11 trustee (the "Trustee") on the motion of interested party Cornelius Verhoest and application by the United States Trustee, by Order dated September 2, 2009.

       On January 27, 2010, the Trustee moved to approve bid procedures for the sale of the Debtor's principal asset, a commercial property located on the Poughkeepsie waterfront (the "Property") that leases to some small businesses and restaurants, including Mahoney's at Dooley Square (Mahoney's). As noted above, the nature of Debtor's business is single asset real estate;

---

[1] 11 U.S.C. § 101(51B) defines "single asset real estate" as "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family famer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

Page 1 of 14

the Property is the principal asset of Debtor. Once the bid procedures were approved and the Property sold, there would be nothing left to do in the case other than complete the sale and distribute the proceeds of the sale to creditors, in the hierarchy of payment established by bankruptcy law.

The tenants do not appear to have been served with the notice of hearing on the motion to approve bid procedures, or the notice of presentment of the order approving procedures to sell subject to their leases. A hearing was held on the bid procedures on February 9, 2010.

On February 15, 2010, the Trustee filed an order on presentment, detailing the procedures for the sale of the Property subject to pre-existing tenant leases. This proposed order was not served on the tenants. Bank of America (the "Bank") opposed the proposed order, arguing that potential buyers should have the opportunity to bid free of pre-existing tenant leases. The Bank's opposition was not served on the tenants.

The Court held a hearing on the proposed order on February 23, 2010 (the "February 23 Hearing"). At the February 23 Hearing, it was determined that potential buyers could bid on the Property free of pre-existing tenant leases, and that the Trustee, as chapter 11 trustee, had the right to accept a bid that was not the highest bid, he considered it, in his business judgment, to be the best bid. *See* Transcript of Hearing held February 23, 2010, Case No, 09-36777, Docket No. 91, p. 11, ll.19-24.

The Court approved the bid procedures by Order dated March 3, 2010 (the "Bid Procedures Order"), which included the following language:

> ORDERED that the Trustee's motion is granted to the extent indicated herein and that the Trustee is authorized to arrange for the sale of the debtor's sole asset 35 Main Street, Poughkeepsie, New York free and clear of all liens, claims and encumbrances, other than preexisting tenant leases with any such liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, priority, perfection and effect as such liens had on the property immediately prior to the sale. <u>Any bidder on the property shall have the option to bid on the property as being sold free and clear of all liens, claims and encumbrances, including preexisting tenant leases.</u> In the event the highest bidder has bid on the property free and clear of all liens, claims and encumbrances, including preexisting tenant leases, then the sale shall be as free and clear of said

leases and any claims of existing tenants will attach to the sales proceeds as set forth above. The sale shall be subject to the Sale Notice Procedures (as such term is defined below) and other terms of this order set forth below …

…. (f) In the event there is a competing bid the Operating Trustee will conduct an auction among all bidders who have submitted an acceptable down-payment in the amount of $250,000.00 to the Operating Trustee on the second floor of the United State Bankruptcy Court, Poughkeepsie Division, 355 Main Street, Poughkeepsie, New York 12601 on April 7, 2010 at 10:00 a.m. in the anteroom of the courtroom. Each offer must exceed the next highest bid by at least $50,000.00. …

(g) Any valid and enforceable liens on the property to be sold will attach to the proceeds of the proposed sale in the same priority as existed prior to such sale and subject to any claims and defenses that the Trustee may possess with respect thereto.  Sales proceeds will be utilized by the Trustee in accordance with the Bankruptcy Code and any order regarding the use of cash collateral.

…. (k) Nothing in the preceding paragraphs shall prevent the Trustee, in his business judgment, from accepting a bid that is not the highest bid.

On March 5, 2010, the Trustee moved to sell the property.  The tenants, including Mahoney's, were served with the Notice of Motion Approving Auction Procedures (the "Sale Motion").  The notice of hearing on the Sale Motion which included the following language:

Please take further notice, that pursuant to this Court's March 3, 2010 order any bidder on the property shall have the option to bid on the property as being sold free and clear of all liens, claims and encumbrances, including preexisting tenant lease.  In the event that highest bidder has bid on the property free and clear of all liens, claims and encumbrances, including preexisting tenant leases, then the sale shall be free and clear of said leases and any claims of existing tenants will attach to the sales proceeds.

The served Sale Motion included a copy of the Bid Procedures Order, which preserves the ordinary scheme of priority of creditors in bankruptcy law, with respect to the proceeds of the Sale.  The Sale Motion stated that the Trustee would auction the property to the highest responsible bidder on April 7 at 10 a.m.  Objections were due on March 30, 2010.

***<u>No Order or notice involved in the sale ever provided that the proposed buyer would be required to provide adequate protection for tenants' interests, or that the interests of tenants would have a higher priority than that of a secured creditor.</u>*** In fact, the first complete paragraph on Page 2 and the sub-paragraph (g) of the Bid Procedures Order expressly preserve the scheme of priority of creditors established by the bankruptcy law.

On April 7, 2010, Preferred Group of Manhattan, Inc. ("Preferred") credit bid on the Property (the "Sale:"), and bought the Property free of pre-existing leases for $3.75 million. The Bank allegedly had assigned its claim to Preferred prior to the Sale. The order approving the sale was not submitted to the Court for entry until the week of May 3, 2010.

On May 3, 2010, Mahoney's appeared in the bankruptcy case by counsel, and filed an application for an order to show cause, seeking to enforce the Bid Procedures Order and to enjoin the transfer of title to the Property free of the leases. Mahoney's argued that the Bid Procedures Order and the un-entered Sale Order provide that the leases would not be terminated unless there were sufficient sale proceeds to provide the tenants with adequate protection pursuant to 11 U.S.C. §§ 365(h) and 365(e).

The Court held a spirited hearing on the application for an order to show cause on May 7, 2010 (the "May 7 Hearing"). The Court gave Preferred permission to move for relief from the stay at the conclusion of the May 7 Hearing, and heard the ensuing lift-stay motion on May 12, 2010 (the "May 12 Hearing"). After the May 12 Hearing, the Court entered the Sale Order on May 12, 2010, which permits Preferred to take title free of tenant leases.

On May 20, 2010, counsel to Mahoney's filed a notice of appeal, and an application for an order to show cause why a stay pending appeal should not be granted (the "Application"). The Court denies the application for the order to show cause. Among other things, Mahoney's has failed to show a likelihood of success on the merits, because the provisions of the Bankruptcy Code on which it relies are inapposite, and the Bid Procedures Order is unambiguous.

### *<u>Statement of jurisdiction</u>*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(N). A motion for a stay pending appeal must initially be brought in bankruptcy court pursuant to Fed. R. Bankr. P. 8005.

The following constitutes the Court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 9014(c).

### *Principles of bankruptcy law in single-asset real estate cases*

When a debtor files a petition for bankruptcy relief, an estate is created. 11 U.S.C. § 541(a). The estate is comprised of all of a debtor's legal or equitable interests in property, including causes of action. See *id.*

Upon the filing of the petition, the automatic stay arises. § 362(a). The automatic stay is a phenomenon in law, a broad injunction that stops efforts to collect pre-petition debts. *Id.* The automatic stay does not stop every act, for example certain criminal or family law matters, but these exceptions are not relevant in the case at bar. *See* § 362(b).

One of the most fundamental features of a bankruptcy case is the placement of creditors into classes, the priority scheme for repayment of claims. Generally, the claims of secured creditors are satisfied first, then administrative claims such as the claim of a chapter 11 trustee, then priority unsecured claims such as certain taxes, then general unsecured claims such as damages for breach of a contract.

"The terms single asset case, or single asset real estate case, are well known and often used colloquialisms which essentially refer to real estate entities attempting to cling to ownership of real property in a depressed market … rather tha[n] businesses involving manufacturing, sales, or services." *In re 83-84 116th Owners Corp.*, 214 B.R. 530, 534 (Bankr. E.D.N.Y. 1997) (finding development of co-operative housing was single asset real estate). Single-asset real estate cases are notorious for being bad-faith filings, because there is usually no equity in the property and few unsecured creditors, and the cases are usually filed shortly before a foreclosure sale by the commercial lender. *See id.* at 534-535; *In re Loco Realty Corp.*, 2009 WL 2883050 (Bankr. S.D.N.Y. June 25, 2009) (debtor's proposed plan of reorganization was unrealistic and case was dismissed; test of debtor's bad faith was whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy).

To avoid losing the protection of the automatic stay, single-asset real estate debtors must either propose a plan with a reasonable possibility of success, usually within 90 days of commencing the case, or else make monthly adequate protection payments to the secured

creditor equal to the non-default contract rate of interest. Bankruptcy Code § 362(d)(3). Otherwise, the court must grant the secured creditor's motion for relief from the stay. *Id.*

### *Standard for whether an order to show cause should be granted*

Generally, motions in bankruptcy court must be made on 14 days' notice. LBR 9006-1(b). LBR 9077-1(a) provides, "No order to show cause shall be granted except upon a clear and specific showing by affidavit of good and sufficient reasons why proceeding other than by notice of motion is necessary."

A hearing on a motion for a stay pending appeal does not appear to be required by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 8005 (motion for stay pending appeal must ordinarily be presented to the bankruptcy judge in the first instance). If a hearing were required, the Court would be permitted to dispense with the hearing pursuant to 11 U.S.C. § 102(1), which provides that the phrase "after notice and a hearing" means such notice and an ***opportunity*** for a hearing as is appropriate in the particular circumstances. Further, the phrase "after notice and a hearing" authorizes an act without a hearing if such notice is given properly and (i) a hearing is not timely requested, or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act. 11 U.S.C. § 102(1)(B). Finally, Fed. R. Bankr. P. 9006(c)(1) provides, "… when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced."

Here, the Court finds that a hearing on the Application is not required. Counsel for Mahoney's does not actually request a hearing – the affidavit in support of the Application specifically requests a stay pending appeal. If a hearing were provided for by the Bankruptcy Code or Bankruptcy Rules, then the Court finds that ample opportunity has been provided for a hearing, because the Application substantially repeats Mahoney's argument that it is entitled to adequate protection, which already has been addressed at two hearings. A third hearing on this matter is unnecessary and would unduly burden the estate.

The Court holds that Mahoney's has received a sufficient amount of due process throughout this case, including with respect to the Bid Procedures Order and the Sale. Mahoney's was served with the Sale Motion, more than a month before the Sale was held. The Sale Motion included written notice that the Sale might be free of pre-existing leases. The Bid

Procedures Order was served with the Sale Motion as an exhibit.[2] The Sale Motion was served just two days after the Bid Procedures Order was docketed. Despite this notice, Mahoney's failed to seek reconsideration or appeal the Bid Procedures Order, and did not participate at the Sale.

In the case at bar, Mahoney's failure to attend the sale, or even file a paper expressing its view that it was entitled to adequate protection, has never been explained. Mahoney's suddenly appeared in this case ten months after the bankruptcy case was commenced, and one month after the Sale. Mahoney's had proper written notice that the Property might be sold free of its lease. At least one other tenant appeared and participated by counsel at the Sale and numerous other hearings; Mahoney's has offered no excuse for its failure to do the same. The Court rejects as incredible Mahoney's contention that it relied on a newspaper article and only felt it was necessary to appear when served with a letter from the Trustee that the sale was free of the leases and that Mahoney's lease would not be assumed or renewed.

The Court finds that the Application is further attempt to delay. The May 12 Hearing was a week ago; indeed, the only opposition Mahoney's filed with respect to the May 12 Hearing was an offer to buy the Property from Preferred, at Preferred's bid price. Mahoney's offered no downpayment, proof of means to pay, or any other credible evidence that it was willing or able to buy the Property required by the Bid Procedures Order. Counsel to Preferred, a necessary party, denied the offer on the record of May 12 Hearing. The Court notes that the Bid Procedures required bids to be made in increments of $50,000 greater than the preceding bid. Even if the late offer were not disingenuous, it was inadequate pursuant to sub-paragraph (f) of the Bid Procedures.

### *Standard for a stay pending appeal*

For a stay pending appeal, a party must show that it will suffer injury if the stay is denied; that there will be no harm to others if the stay is granted; and the party has a likelihood of success on the merits." *See In re Calpine Corp.*, 2008 Bankr. LEXIS 217 (January 24, 2008 Bankr. S.D.N.Y.); *In re Saunders*, 1985 WL 2747 (S.D.N.Y. Sept. 24, 1985) (standard for stay

---

[2] The Court notes that it is alleged that Debtor's principal was a part owner of Mahoney's at the time of the Sale. Debtor's counsel were served with notice of the original motion to approve bid procedures. It may be argued that Mahoney's has had actual knowledge of the events in this case due to its relationship with Debtor's principal, but such argument is not necessary to the Court's finding that Mahoney's received sufficient due process. In consideration of the legal analysis presented herein, the Court need not rule on whether Mahoney's is or was an insider of the Debtor, or the effect of such insider status.

Page 7 of 14

pending appeal is similar to that of a preliminary injunction; district court denied motion for stay pending appeal because debtors failed to show that there was any likelihood of success on the merits upon appeal). Mahoney's argues that the Court must consider a fourth factor, the public interests that may be affected.

### *1. Mahoney's will not suffer injury if the stay is denied.*

The Sale Order does not expressly provide for the adequate protection of tenants. Instead it provides for tenants claims attaching in the ordinary priority established by bankruptcy law. Mahoney's has been a tenant in a single-asset real estate case for almost a year. If Mahoney's lease is terminated, this will be a consequence of the bankruptcy.

### *2. There will be harm to others if the stay is granted.*

Postponing the stay will harm the legal rights of Preferred, Debtor's primary secured creditor. Preferred is the successor in interest to Bank of America, which could have moved for relief from the stay at any point in this case. Allowing this litigation to continue will force the Trustee to commit further resources to administering the case, resulting in an administrative claim that must be satisfied in full before junior creditors can get any payment on their claims.

It is irrelevant how much Preferred paid for the assignment of Bank of America's claim. Preferred acquired the rights of the principal secured creditor, and bought the Property at the Sale. The Bid Procedures Order is clear and unambiguous – the Sale was free and clear of tenant leases, and there was no promise of adequate protection to the tenants in the Bid Procedures Order.

### *3. Mahoney's has little likelihood of success on the merits*

Mahoney's has little likelihood of success on the merits, because it assumes that the Bid Procedures Order requires adequate protection of tenants, when in fact the Bid Procedures Order unambiguously preserves the regular scheme of priority of creditors in bankruptcy, which does ***NOT*** provide for payment of tenant's claims ahead of the claims of secured creditors. Further, the Bid Procedures Order makes no mention whatsoever of adequate protection for tenants' interests. The Bankruptcy Code cannot be interpreted in the manner Mahoney's suggests to require adequate protection of tenants' interests.

Mahoney's repeats its argument that Bankruptcy Code §§ 363(e) and 365(h) require adequate protection of tenant's interests. This legal argument consists of the bare recitation of the statutes, and some non-binding case law on § 365(h), which this Court has already rejected in

light of the persuasive New York authority of *In Cheslock-Bakker & Associates, Inc. v. Kremer (In re Downtown Athletic Club)*, No. M-47 (JSM), 2000 WL 744126 (S.D.N.Y. June 9, 2000).

Bankruptcy Code § 365(h) provides certain limited remedies for a tenant whose lease is rejected by the trustee or debtor-in-possession.[3] It is irrelevant to the matter at bar. Bankruptcy Code § 365 describes what happens when a trustee assumes or rejects an executory contract or an unexpired lease. Bankruptcy Code § 363 concerns the use or sale of property. These are different issues in bankruptcy. In this matter, the Court does not consider the rejection of Mahoney's lease. Instead, the Court considers the sale of the Property free of pre-existing tenant leases.

In *Cheslock-Bakker*, the debtor sold its building free of liens, claims and leases pursuant to a chapter 11 plan. Defendants subsequently alleged leasehold interests in the building. The district court held that the sale extinguished any ongoing interest of the defendants in the building that could be enforced against either the buyer or the debtor. The court noted that there was a bona fide dispute as to the interest of the purported lessees, which is one of the factors governing when a property may be sold free and clear of interests. The court stated the rule: "Section 365(h) applies when a debtor-lessor remains in possession of its property and rejects a lease, not when the debtor-lessor sells property subject to an interest (such as a lease) free and

---

[3] 11 U.S.C. § 365(h) provides:
    (1) (A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and –
        (i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or
        (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.
    (B) If the lessee retains its rights under subparagraph (A)(ii), the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

clear of that interest pursuant to Section 363. Thus, when the debtor-lessor sells property subject to a lease free and clear of that lease pursuant to Section 363(f), the Court will not apply Section 365(h)." *Id*.

Similarly, in the case at bar, the lease was not rejected by The Trustee or the Debtor. Instead, the Property was sold free and clear of liens and pre-existing tenant leases, pursuant to § 363(f) and the Bid Procedures Order, which was served on Mahoney's. Mahoney's remedy was to timely move for reconsideration of the Bid Procedures Order, or oppose the Sale, not appear a month after the Sale and demand that the fundamental bankruptcy priority scheme of creditors be upset by application of an inapposite Code section.

Mahoney's insists that *Cheslock-Bakker* is distinguishable from the matter at bar, but does not present an analysis of *Cheslock-Bakker* sufficient to persuade the Court that the case is indeed distinguishable. Mahoney's relies on a Massachusetts bankruptcy case, *In re Haskell L.P.* (Bankr. D. Mass. 2005), in which debtor proposed a liquidating plan of reorganization, which included the rejection of all unexpired tenant leases. The court decided to determine the motion to sell before ruling on the plan and disclosure statement, because they would be unfeasible if the sale were not approved. The court held that the tenant was entitled to adequate protection from the proceeds of the sale.

The court in *Precision Industries, Inc. v. Qualified Steel SBQ, LLC (In re Qualitech Steel Corp.)*, 327 F.3d 537 (7th Cir. 2003) reached an outcome similar to that of *Haskell*. The court held that a 363 sale extinguished a tenant's possessory interest, and stated in dicta that a lessee could have adequate protection. The court failed to consider that offering such adequate protection to a general unsecured creditor would catapult it ahead of its position behind secured, administrative, and priority unsecured creditors, in complete contravention of the priorities of the Bankruptcy Code. Such a finding is inconsistent with *In re Megan-Racine Assocs., Inc.*, 192 B.R. 321, 327 (Bankr. N.D.N.Y. 1995) (interpreting § 363(e) to not require adequate protection for utility company), discussed herein; *In re Ames Dep't. Stores, Inc.*, 306 B.R. 43, 60, n.56 (Bankr. S.D.N.Y. 2004) (damages for breach of lease is a general unsecured claim pursuant to Bankruptcy Code § 365(g)(1)).

The Court is not required to follow authority that is not established by the Second Circuit, such as *Haskell* or *Precision Industries, Inc.* The Court follows the law developed in its own circuit, *Cheslock-Bakker*, which is consistent with the holding in *In re Megan-Racine Assocs.*

The Court is not persuaded by Mahoney's law from other jurisdictions that it should cause a rift within the circuit concerning the reconciliation of § 363(f) with § 365(h).

Bankruptcy Code § 363(e) provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

Bankruptcy Code § 363(p)(2) provides that the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of its interest.

The issue is whether Mahoney's, allegedly a tenant under a long-term lease, is "an entity that has an interest in property" within the meaning of § 363(e). Cases construing § 363(e) fall into two groups: 1. only secured creditors may demand adequate protection pursuant to § 363(e); and 2. secured creditors and lessors may demand adequate protection. *In re Megan-Racine Assocs.*, 192 B.R. at 326-327. The court in *In re Megan-Racine Assocs.* declined to extend the protection of § 363(e) to holders of contingent interest, in that case, a utility company.

In the matter at bar, the Court follows *In re Megan-Racine Assocs.* to decline to extend the protection of § 363(e) to Mahoney's, a tenant faced with eviction. Mahoney's has offered no case law construing § 363(e) in its favor. Mahoney's is neither a secured creditor nor a lessor. Mahoney's has not offered an estimate of the damages that may result from the termination of its lease. Mahoney's has not presented an estimate of suitable adequate protection. Mahoney's has failed to meet its burden that is required for it to demand adequate protection pursuant to § 363(e).

Further, as noted above, allowing a party to a terminated lease to take "adequate protection" would advance its well-established bankruptcy law position as an unsecured creditor. When a debtor rejects a lease, the other party's damages are general unsecured damages. Bankruptcy Code § 365(g); *Ames*, 306 B.R. at 60.

Mahoney's makes passing reference to § 363(l). The section has no relevance to the matter at bar. Section 363(l) is generally interpreted to mean that *ipso facto* clauses in contracts that condition a debtor's rights on filing for bankruptcy are unenforceable under the Code. *See In re St. Johnsbury Trucking Co., Inc.* 191 B.R. 22 (S.D.N.Y. 1996); *In re Gaslight Village, Inc.*, 6 B.R. 871 (Bankr. Conn. 1980) (§§ 363(l) and 541(c)(1)(B) "expressly denounce so-called ip*so*

Page 11 of 14

*facto* clauses which terminate the debtor's interest in the property upon the insolvency or financial condition of the debtor, or on the commencement of a bankruptcy case"); *In re Railway Reorganization Estate, Inc.*, 133 B.R. 578 (Bankr. D. Del. 1991) ("Clauses which purport to terminate, limit or otherwise modify a debtor's interest in its property upon the filing of a bankruptcy petition are unenforceable under the Code").

Mahoney's "law of the case" argument is without merit. "[T]he law of the case doctrine is, at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided." *Brody v. Village of Port Chester*, 345 F.3d 103, 110 (2d. Cir. 2003). The record of the hearings are clear that any carveout from the proceeds of the Sale would be used to satisfy both administrative and unsecured claims, and would probably not exceed $25,000. The "law of the case" doctrine does not stretch to allow peripheral parties to enforce language in Court orders that does not exist.

The Bid Procedures Order is unambiguous. Mahoney's attempt to read a requirement of adequate protection into the Bid Procedures Order is not likely to succeed on appeal. The Bid Procedures Order provides, "In the event the highest bidder has bid on the property free and clear of all liens, claims and encumbrances, including preexisting tenant leases, then the sale shall be as free and clear of said leases and any claims of existing tenants will attach to the sales proceeds ***as set forth above***" (emphasis added). "As set forth above" can only refer to the following clause: "… any such liens, claims, and encumbrances ***attaching to the sales proceeds with the same force, validity, priority***, perfection and effect as such liens had on the property immediately prior to the sale" (emphasis added). The Bid Procedures Order clearly preserves the hierarchy of priorities set by conventional bankruptcy law. It is well-established that claims of secured creditors and administrative creditors such as the Trustee are satisfied first. *In re Megan-Racine Assocs., Inc.*, 192 B.R. 321, 327 (Bankr. N.D.N.Y. 1995) ("Claimants holding security interests generally will receive their collateral or its value before any distribution is made to administrative creditors and then, following them, general creditors"). Mahoney's argument that the Sale Order puts tenant claims ahead of these creditors is without merit.

"[B]ankruptcy causes fundamental changes in the nature of corporate relationships. One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors. In cases in which it is clear that the estate is not large enough to cover any shareholder claims, the trustee's exercise of the corporation's attorney-client privilege will benefit

only creditors, but there is nothing anomalous in this result; rather, it is in keeping with the hierarchy of interests created by the bankruptcy laws. *See generally* 11 U.S.C. § 726(a)." *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 355 (1985) (power to waive attorney-client privilege with respect to pre-bankruptcy communications passes to bankruptcy trustee). This rule by the Supreme Court is equally applicable to the matter at bar. Whatever influence Mahoney's had as a tenant with a long-term lease has been subordinated to that of Preferred and the Trustee as an ordinary consequence of the Debtor's filing for bankruptcy.

Mahoney's alleged reliance on a newspaper report following the sale that Preferred terminated the lease was its own folly and is not relevant to the issue of whether adequate protection is required by the Bid Procedures Order.[4] It is not relevant to this matter how much consideration Preferred paid the Bank for the assignment of the note and mortgage.

### *4. There are no compelling public interests at stake in this matter that would be affected.*

As noted, bankruptcy causes fundamental relationship changes among the debtor, the creditors, and other parties with a relationship to the debtor. The fact that a natural consequence of a properly noticed sale in bankruptcy might cause a tenant's lease to be terminated is not a public interest sufficient to stay the order pending appeal. The Trustee's letter to the tenants states that non-insider tenants that are current will likely continue in their leases. This is not cherry-picking among tenants. Rather, the legal removal of tenants in default is an ordinary exercise of business judgment in a commercial landlord-tenant relationship.

## CONCLUSION

A hearing on Mahoney's application for an order to show cause for a stay pending appeal is not required by the Code, the Rules, or the circumstances of this case. The Application for a stay pending appeal is denied because Mahoney's has not demonstrated a likelihood of success

---

[4] The Court notes that statements in newspaper articles are inadmissible hearsay.

on the merits. Bankruptcy Code §§ 363(e) and 365(h) do not give Mahoney's the relief it desires.

A separate Order denying the Application shall be entered.

Dated: Poughkeepsie, New York
May 21, 2010

/s/ Cecelia Morris<br>
U.S. Bankruptcy Judge